UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN EICHHOLZ,

               Plaintiff,               No. 10-cv-13622
                                             Hon. Gerald E. Rosen

vs.

WELLS FARGO BANK, NA.

               Defendant.
_____/

**OPINION AND ORDER GRANTING DEFEDANT'S MOTION
FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

On September 10, 2010, John Eichholz ("Plaintiff") filed an eleven-count complaint against Wells Fargo Bank ("Defendant") in a dispute over Plaintiff's mortgage. Defendant filed a motion for summary judgment[1] on May 26, 2011, and Plaintiff responded on July 15, 2011. In his response, Plaintiff agreed to the dismissal of eight claims. All that remains are the following: (1) violations of the Real Estate Settlement Procedures Act, (2) violations of the Fair Credit Reporting Act, and (3) a violation of the Equal Credit Opportunity Act.

---

[1] While Defendant seeks summary judgment on all counts, certain claims are more appropriately addressed under Rule 12(b)(6). As such, the Court will dismiss *sua sponte* those claims that lack sufficient factual content for the Court to reasonably infer that Defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

1

Having reviewed the parties' submissions in support of and opposition to the motion and the accompanying record, the Court finds that the pertinent facts and legal arguments are fully presented in these written materials and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. BACKGROUND

In February 2007, Plaintiff entered into a $144,000 mortgage serviced by Defendant. After encountering hardship in October 2009, Plaintiff sought a loan modification, hoping to alleviate his financial burden and avoid foreclosure. Defendant enrolled Plaintiff in a trial program during the pendency of his credit application. The program, which did not substitute for Plaintiff's original mortgage, allowed Plaintiff to make reduced monthly payments and avoid foreclosure during the trial period. In April 2010, Defendant informed Plaintiff that his loan modification had been denied. At the time he was notified, Plaintiff was already behind on his mortgage obligations. Defendant evaluated Plaintiff for other alternative modifications, but each was denied. Defendant informed Plaintiff of his accumulated arrearage in June 2010, an amount which Plaintiff continues to contest.

In July 2010, Plaintiff sent Defendant a letter disputing his indebtedness and requesting a large volume of information pertaining to Plaintiff's mortgage and payment history. Defendant responded to Plaintiff's request by letter that same month. The letter explained how Plaintiff's payments were applied and included a number of documents,

2

such as Plaintiff's mortgage agreement and Plaintiff's account activity statement through July 2010. Around the same time, Plaintiff also lodged complaints with at least two credit agencies, contending that the information reported by Defendant was false. Defendant and the credit agencies reinvestigated Plaintiff's account and found no errors. Plaintiff then proceeded to file this lawsuit.

### III. ANALYSIS

**A.     Applicable Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the [Court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations omitted). "[T]his burden can be satisfied by demonstrating to the district court that there is no evidence underlying the nonmoving party's case." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

In deciding a motion brought under Rule 56, the Court views the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . .

." Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     Real Estate Settlement Procedures Act**

Count I of Plaintiff's complaint alleges multiple violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, a statute that imposes obligations on servicers of federally-regulated mortgages. Plaintiff claims that Defendant violated § 2605 and § 2607 of RESPA by doing the following: (1) taking unearned fees, (2) failing to correct Plaintiff's account, (3) failing to explain why Plaintiff's account was accurate, (4) failing to provide requested information, and (5) reporting Plaintiff's overdue payments to credit agencies. (Pl.'s Compl. ¶¶ 38-39.) Defendant's motion for summary judgment argues that Defendant complied with RESPA or, in the alternative, that Plaintiff has failed to plead damages. (Def.'s Mot. for Summ. J. at 6.)

Most of the claims contained in Count I of Plaintiff's complaint arise out of § 2605(e) of RESPA, which governs the sequence of events after a mortgagor contacts a servicer disputing account details or requesting information. Section 2605(e)(2) provides that, after receiving a qualified written request,[2] the servicer must either make corrections, explain why the servicer believes its records are correct, or provide the

---

[2] Defendant does not contest that Plaintiff's correspondence was a qualified written request. *See* 12 U.S.C. § 2605(e)(1)(B).

4

information requested by the mortgagor; and the servicer must do so within sixty days.[3] 12 U.S.C. § 2605(e)(2). Section 2605(e)(3) restricts the servicer's ability to provide information about the mortgagor to credit agencies after receiving a qualified written request. 12 U.S.C. § 2605(e)(3). Finally, § 2607 prohibits referral fees and unearned fee splitting. 12 U.S.C. § 2607(a)-(b). The Court will address each of Plaintiff's claims in turn.

First, Plaintiff's claim regarding unearned fees fails because it is incomplete and conclusory. Plaintiff merely claims that Defendant "violated RESPA by taking unearned fees from Plaintiff." (Pl.'s Compl. ¶ 38.) The statutes cited by Plaintiff, however, forbid referral fees and unearned fee <u>sharing</u>. 12 U.S.C. § 2607(a)-(b). The language of § 2607(b) does not contemplate situations where a servicer merely charges unearned fees. Section 2607(b) is, after all, titled "splitting charges," and prohibits giving or receiving "any [unearned] portion, split, or percentage of any charge." 12 U.S.C. § 2607(b). Plaintiff has not alleged that Defendant received unearned fees that were split with others, only that Defendant took unearned fees broadly. Furthermore, even if he had fully pled this claim, Plaintiff has not offered any factual allegations in support thereof. Despite having a comprehensive account statement at his disposal, Plaintiff has not identified particular fees that were taken wrongfully. Plaintiff's response brief does not even address this claim. Without anything more specific, Plaintiff has failed to plead a cause of action that rises above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[3] Plaintiff concedes that Defendant's response was timely. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.)

555 (2007).  Plaintiff has instead made an allegation without any specificity or factual support.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A complaint may not rest on conclusory statements alone.  *Id.*   Therefore, dismissal is appropriate.  Fed. R. Civ. P. 12(b)(6).

Under § 2605 of RESPA, the servicer of a federally regulated mortgage has three options when it receives a qualified written request from a mortgagor:  it can correct the mortgagor's account, explain why it believes the account to be correct, or provide the information requested.  12 U.S.C. § 2605(e)(2).  Plaintiff has alleged that Defendant violated all three provisions when it responded to his qualified written request ("RESPA response").  These assertions only amount to a single RESPA claim, however, because the three provisions allegedly violated are alternatives that the mortgage servicer may choose between.  *See Bryant v. BAC Home Loans Servicing*, LP, No. 10-12677, 2011 WL 4710805, at *2 (E.D. Mich. Oct. 6, 2011); *Wienert v. GMAC Mortg. Corp.*, No. 08-14482, 2009 WL 3190420, at *8 (E.D. Mich. Sept. 29, 2009).  This conclusion is confirmed by the language of § 2605(e)(2)(A)-(C), which uses the conjunction "or" in listing the servicer's options.  The Court will address Plaintiff's claim accordingly.

Despite viewing the facts in a light most favorable to Plaintiff, the Court finds that summary judgment is appropriate regarding Defendant's compliance with § 2605(e)(2).  Plaintiff has not adduced any disputes of fact: the parties do not contest the content of Plaintiff's qualified written request or Defendant's response.  Rather, the parties' disagreement centers on whether Defendant's RESPA response was sufficient as a matter of law.  To this end, Plaintiff's complaint merely recites the statutory language of §

6

2605(e)(2) without alleging any specific deficiencies in Defendant's RESPA response. (Pl.'s Compl. ¶ 39.) Without more, dismissal would be appropriate. However, Plaintiff's response to Defendant's motion remedies this shortcoming by identifying a single specific flaw–Defendant's alleged failure to explain Plaintiff's $8,869.93 arrearage–but this defect only confirms that Defendant is entitled to judgment as a matter of law. As explained below, the figure appears to be correct, and Defendant complied with its obligation to explain why it believed Plaintiff's account was accurate. *See* 12 U.S.C. § 2605(e)(2)(B)(i).

In a June 13, 2010 letter, Defendant notified Plaintiff that his mortgage was in default, and that Plaintiff owed $8,869.93. Plaintiff disputes this amount, contending that his participation in an earlier trial modification program warrants an account statement reflecting full compliance. Plaintiff claims that "it is unclear, after following every instruction of the Defendant, how Plaintiff could have been in arrears at all in June of 2010." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11.) However, an examination of the documents submitted by Plaintiff shows how the delinquency reached $8,869.93.

After encountering financial hardship, Plaintiff sought a modification under Defendant's Home Affordable Modification Program, an alternative payment plan that allows mortgagors to stay in their homes while making reduced mortgage payments. (Def.'s Mot. for Summ. J. at 2.) Plaintiff participated in a trial version of the program, which allowed Plaintiff to make reduced mortgage payments and avoid foreclosure during the pendency of his application. Plaintiff seems to believe that his participation in the Home Affordable Modification Program Loan Trial Period ("HAMP program" or

"HAMP trial period") suspended his mortgage obligations during that period. That is, Plaintiff thinks that Defendant substituted the reduced HAMP program payments for his full monthly mortgage obligation during the trial period. When Plaintiff entered the HAMP trial period, however, the agreement signed by Plaintiff clearly stated that the HAMP program has no impact on Plaintiff's underlying obligations. In particular, the second page of the HAMP agreement states that acceptance of payments made under the HAMP program "shall not constitute a cure of [Plainitff's] default" and that the HAMP program "is not a modification of the [loan]" unless the parties execute a modification agreement. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3 at 2.) Since no modification agreement was entered into, Plaintiff's original mortgage obligations continued, the HAMP trial period notwithstanding.

    At the conclusion of the HAMP trial period, Plaintiff owed the difference between the total amount due under the original mortgage and the amount remitted during the HAMP trial period. The account activity statement accompanying Defendant's RESPA response shows that Plaintiff's monthly mortgage payment was $1,327 before the HAMP trial program began. Since the HAMP program did not modify the terms of the loan and no modification was entered into, the full $1,327 was due each month. The HAMP trial period payments made by Plaintiff cumulatively covered Plaintiff's obligations for October, November, and December of 2009. (Def.'s Mot. for Summ. J. Ex. 10.) Plaintiff thus owed Defendant payments for January 2010 onward. In its RESPA response, Defendant clearly stated that "[a]s of the date of this letter, the above referenced loan stands due for the January 1, 2010, through, July 1, 2010, payments." (Pl.'s Resp. to

Def.'s Mot. for Summ. J. Ex. 21 at 2.)  The product of $1,327 over seven months (i.e., January 2010 through July 2010) is $9,289.  Plaintiff had $419.07 left in his unapplied funds account at the time of Defendant's letter, thus Plaintiff owed $9,289 less the unapplied funds: $8,869.93.  This is the exact amount Plaintiff contests as excessive and inaccurate.  If Plaintiff has a different calculation in mind, he has failed to offer it.

Furthermore, Defendant's RESPA response contained a careful explanation of how each of Plaintiff's payments were applied, as well as an account activity statement providing further details.  Defendant included all relevant information and thus cannot be said to have provided an inaccurate or incomplete response.  At this point, if Plaintiff claims Defendant's response was insufficient, then it is incumbent upon Plaintiff to identify the shortcoming.  Aside from Plaintiff's disagreement regarding the $8,869.93 owed, however, Plaintiff has not alleged any other specific deficiencies in Defendant's response.  Since Defendant's response provided the information requested and explained why it believed Plaintiff's account to be correct, Defendant is entitled to judgment as a matter of law.  Plaintiff "may not rely merely on allegations or denials in its own pleading," but "must–by affidavits or as otherwise provided in [Rule 56]–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  No genuine disputes of material fact exist, and Defendant is entitled to judgment as a matter of law.  Therefore, summary judgment is appropriate.  Fed. R. Civ. P. 56(a).

Plaintiff also claims that Defendant violated § 2605(e)(3) "by providing information regarding overdue payments to the national credit bureaus" during the

9

statutory period that begins upon receipt of a qualified written request. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11.) Section 2605(e)(3) provides as follows:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency[.]"

12 U.S.C. § 2605(e)(3). Recovery under RESPA requires more than establishing a violation, however. Plaintiff must suffer actual, demonstrable damages, and Plaintiff's damages must occur "as a result of" that specific violation. 12 U.S.C. § 2605(f)(1)(A). Damages are a necessary element of a RESPA claim. *See Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005); *Webb v. Chase Manhattan Mortg. Corp.*, No. 05-0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008); *Collier v. Wells Fargo Home Mortg.*, No. 04-CV-086-K, 2006 WL 1464170, at *3 (N.D. Tex. May 26, 2006); *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 946 (N.D. Ill. 2005). Therefore, "a plaintiff asserting a RESPA violation 'must show that the losses alleged are causally related to the violation.'" *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, No. 10-13780, 2011 WL 4905533, at *4 (E.D. Mich. Oct. 14, 2011) (quoting *Soriano v. Countrywide Home Loans, Inc.*, No. 09-02415, 2011 WL 1362077, at *6 (N.D. Cal. April 11, 2011).

In *Akouri*, the Eleventh Circuit rejected a RESPA claim because the Plaintiff's alleged emotional distress rested on "conclusory statements," without any corroborative

10

evidence. 408 F.3d at 1345.[4] Similarly, the court in *Webb* rejected a RESPA claim for "failure to present any specific evidence of . . . damages." *Webb v. Chase Manhattan Mortg. Corp.*, 2008 WL 2230696, at *14. The *Webb* court emphasized that, even if a RESPA violation occurred, "Plaintiff would still be required to demonstrate that this resulted in an actual injury." *Id.* at *15. Plaintiff has, at various points, attempted to claim that he suffered actual damages, but none is sufficient. Plaintiff's complaint broadly states that he "suffered damages," (Pl.'s Compl. ¶ 40); and Plaintiff's affidavit claims he "was frustrated and experienced a range of intense, negative emotions" once Defendant reinvestigated his account and found no errors, (Eichholz Aff. ¶¶ 24-25). Plaintiff's response to Defendant's motion goes into slightly more detail, claiming economic damages, a damaged credit score, potential increases to insurance rates, and limited job prospects. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 12-13.) However, the damages listed above are insufficient as a matter of law either because they did not occur "as a result of" Defendant's alleged violation of § 2605(e)(3) or because the claims are entirely conclusory.

First, Plaintiff's complaint plainly does not plead damages with sufficient specificity. Merely claiming to have suffered damages, without more, epitomizes conclusory pleading. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005); *Webb v. Chase*

---

[4] "Courts are split on whether RESPA allows for the recovery of emotional distress damages." *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, No. 10-13780, 2011 WL 4905533, at *4 (E.D. Mich. Oct. 14, 2011) (citation omitted). The Court does not reach the issue of whether emotional distress is recoverable under RESPA because the damages pled by Plaintiff are fatally deficient in other ways.

11

*Manhattan Mortg. Corp.*, No. 05-0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008).  Second, Plaintiff claims to have suffered a "range of intense, negative emotions." (Eichholz Aff. ¶¶ 24-25.)  However, merely experiencing frustration does not constitute emotional distress.  Recoverable emotional distress requires "[a] highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury)," Black's Law Dictionary 601 (9th ed. 2009), because "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it[,]" Restatement (Second) of Torts § 46 cmt. j (1965) (quoted in Black's Law Dictionary 601 (9th ed. 2009)).  While Plaintiff doubtless experienced an unpleasant emotion, frustration does not rise to the level of emotional distress.  Furthermore, even if Plaintiff's harm constituted emotional distress, Plaintiff has failed to describe the "range of intense, negative emotions" he felt with any degree of detail, nor has Plaintiff offered proof thereof.  Compare *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th. Cir. 2011), where the court denied a summary judgment motion in a RESPA suit because the plaintiffs had described their emotional distress in detail.  629 F.3d 676, 696 (describing distress as including sleep loss, depression, shakiness, headaches, and crying).  Merely claiming to have experienced negative emotions does not suffice to establish damages under RESPA. *See Webb v. Chase Manhattan Mortg. Corp.*, No. 05-0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008) ("Despite the fact that it is Plaintiff Carter's burden to show actual damages, she has failed to present any specific evidence of such damages. Rather, Plaintiff simply states that her damages include . . . damages for emotional distress . . . .").

Finally, Plaintiff's response to Defendant's motion lists the following as damages supposedly suffered: economic damages, a damaged credit score, potential increases to insurance rates, and limited job prospects. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 12-13.) These claims fail, however, because no proof is offered and the damages do not appear to have occurred "as a result of" Defendant's purported violation of § 2605(e)(3). 12 U.S.C. § 2605(f)(1)(A). Plaintiff has not presented evidence in support of the damages claimed. In *Bryant v. BAC Home Loans Servicing, LP*, No. 10-12677, 2011 WL 4710805 (E.D. Mich. Oct. 6, 2011), the court considered and rejected damages claimed by a RESPA plaintiff that included increased insurance rates and limited job opportunities because the plaintiff "submitted no evidence to support his claims for damages." *Bryant*, 2011 WL 4710805, at *3. As in *Bryant*, Plaintiff has claimed similar damages and has likewise failed to present any evidence in support of his damages. "A plaintiff has the burden to show damages and conclusory statements will not support allegations of actual damages." *Id.* (citing *Webb v. Chase Manhattan Mortg. Corp.*, No. 05-0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008).

Further, Plaintiff alleges that these damages occurred because Defendant provided information about overdue payments to credit agencies during the sixty-day period following receipt of Plaintiff's qualified written request. However, Plaintiff's credit report already contained unfavorable information regarding the specific delinquent payments at issue, as evidenced by Defendant's data request, which shows overdue payments in Plaintiff's credit history prior to the reinvestigation requested by Plaintiff. (Def.'s Mot. for Summ. J. Ex. 11.) Plaintiff's own admissions confirm that Plaintiff's

13

credit history contained negative information prior to any improper reporting by Defendant. Plaintiff says he became upset when he realized Defendant "was not willing to fix my credit after trashing it and after getting a second chance to fix it." (Eichholz Aff. ¶ 25.) In order to have previously "trashed" Plaintiff's credit report, disparaging information must have already been present. Moreover, the opportunity to "fix" Plaintiff's credit report implies that Plaintiff had specific information in mind when he sought a reinvestigation. Without evidence showing that Plaintiff's credit score fell as a result of Defendant's reinvestigation, the negative effects stemming from Plaintiff's less than favorable credit report existed prior to any violation of § 2605(e)(3). Plaintiff has not shown otherwise. For these reasons, Defendant is entitled to judgment as a matter of law. Since no material facts are disputed, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

While the Court resolves Plaintiff's § 2605(e)(3) claim on other grounds, it is important to note that Plaintiff's case implicates a worrisome statutory quandary that does not appear to have come up in other reported cases. Namely, it appears that mortgagors can force servicers of federally regulated mortgages to violate § 2605(e)(3) of RESPA by sending a qualified written request and subsequently requesting a reinvestigation from a credit agency under 15 U.S.C. § 1681s-2. Under 15 U.S.C. § 1681s-2(b)(1), a bank must conduct an investigation when it is informed of a dispute between a consumer and a credit agency. Additionally, 15 U.S.C. § 1681s-2(b)(1)(C) requires the bank to notify the credit agency about the outcome of its investigation; and § 1681s-2(b)(2) only gives the bank thirty days to do so. "Regardless of the results of its investigation, the Bank <u>must</u>

14

report back to any [credit agency] that notified it of the dispute." *Rambarran v. Bank of Am.*, NA, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (emphasis added).

However, as discussed above, § 2605(e)(3) of RESPA forbids a bank from providing any information regarding overdue payments to the credit agency for sixty days. 12 U.S.C. § 2605(e)(3). Specifically, § 2605(e)(3) states that mortgage servicers "may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request" during the sixty days following receipt of a qualified written request. *Id.* (emphasis added). Thus, mortgage servicers faced with a credit dispute and a qualified written request must choose which statute to violate: the servicer can refuse to report the results of its investigation, thereby violating 15 U.S.C. § 1681s-2(b)(1)(C); or the servicer can report the results of its investigation in violation of 12 U.S.C. § 2605(e)(3). While equitably estopping the borrower from asserting a § 2605(e)(3) claim might circumvent the problem, it is not the role of courts to override clear statutory language. *Dodd v. United States*, 545 U.S. 353, 359 (2005) ("Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted."). "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241(1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Nevertheless, the intersection of these two statutory provisions creates a vexing conundrum for unsuspecting servicers of federally regulated mortgages. Fortunately, this dilemma does not have to be resolved in this case.

## C.     Fair Credit Reporting Act

Defendant also seeks summary judgment as to Plaintiff's various claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  Plaintiff claims that Defendant (1) failed to notify credit reporting agencies about disputed debt information, (2) willfully or negligently failed to implement credit reinvestigation procedures, and (3) willfully or negligently failed to properly reinvestigate Plaintiff's credit report.  (Pl.'s Compl. ¶¶ 63-67.)  The Court will address each claim in turn.

Plaintiff's first FCRA claim, that Defendant "failed to notify the consumer reporting agencies to whom it reported credit information that the debt was disputed" fails as a matter of law because § 1681s-2(b) of the FCRA does not impose any such obligation on Defendant.  Section 1681s-2(b) requires that, after receiving notice of a credit dispute, entities that provide information to credit agencies must do the following: conduct an investigation; review the information provided by the credit reporting agency; report the results of the investigation to the credit reporting agency; if inaccurate or incomplete information is found, report that fact to all relevant credit reporting agencies; and, if an item in dispute is found to be inaccurate or incomplete, modify the item, delete the item, or block reporting of information pertaining to the item.  15 U.S.C. § 1681s-2(b)(1).  No portion of § 1681s-2(b) required Defendant to notify credit agencies that Plaintiff disputed his debt.  Notifications are only required when an investigation ends and information is found to be incomplete or inaccurate.  As discussed earlier, however, no such error or omission was found.  Therefore, Plaintiff's claim fails and is dismissed accordingly.  Fed. R. Civ. P. 12(b)(6).

16

Plaintiff's second FCRA claim, that Defendant willfully or negligently failed to implement reinvestigation procedures, is also lacking. Plaintiff has failed to offer any particular allegations on point. For instance, Plaintiff has not identified how his credit reinvestigation fell short, nor how Defendant's procedures are deficient as a matter of policy. Defendant claims that it conducted a proper reinvestigation of Plaintiff's credit, and nothing put forth by Plaintiff suggests otherwise. (Def.'s Mot. for Summ. J. at 14-15.) The Court's examination of Plaintiff's account statement and loan documents confirms that Defendant conducted a proper investigation of Plaintiff's dispute. *See* Part B, *supra*. As such, there appears to be no dispute of material fact, and Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Summary judgment is also appropriate as to Plaintiff's third FCRA claim, which alleges that Defendant willfully or negligently failed to conduct a suitable reinvestigation of Plaintiff's credit, for the same reason as above: it appears that Defendant conducted a proper inquiry into Plaintiff's credit. While Plaintiff continues to dispute his delinquency and claim that issues of fact exist, Plaintiff has not identified how Defendant's reinvestigation was deficient in the face of ample evidence supporting Defendant's position. Rule 56 makes clear that parties disputing summary judgment must identify specific factual disputes instead of resting on allegations alone. Fed. R. Civ. P. 56(c)(1). Plaintiff devotes multiple pages of his response brief to the meaning of the word "accuracy" without showing what portion of Defendant's records are in fact inaccurate. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14-16.)

17

While Plaintiff claims that his delinquency for the months of May and June 2010 is "objectively false," he has not identified any specific errors. The HAMP trial period did not modify Plaintiff's mortgage obligations, and Plaintiff has not produced a written loan modification. Plaintiff is thus incorrect when he claims to have followed "written instructions of the lender which modified his loan . . . ." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14.) Plaintiff's payment obligations continued unabated during the HAMP trial program. The HAMP program is intended to ease the payment burden on delinquent borrowers in order to avoid foreclosure; the program does not waive borrowers' obligations *en masse*.[5] As discussed above, there appears to be no dispute of material fact, and Defendant is entitled to judgment as a matter of law. Therefore, summary judgment is granted. Fed. R. Civ. P. 56(a).

**D.    Equal Credit Opportunity Act**

Defendant also seeks summary judgment on Plaintiff's final claim, a purported violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. Plaintiff alleges a failure to provide written notice regarding the denial of his proposed loan modification. The ECOA forbids discrimination in credit decisions and requires creditors to notify applicants within thirty days of taking an "adverse action" on an application for credit. 15 U.S.C. §§ 1691(a)-(c), 1691(d)(1)-(5). The ECOA defines "adverse action" as "a denial or revocation of credit, a change in the terms of an existing

---

[5] In fact, it appears that Defendant was actually somewhat generous regarding Plaintiff's credit report. Whereas Plaintiff was in fact delinquent for a number of months in 2009 and 2010, Plaintiff did not disclose as much on Plaintiff's credit report. Rather, October 2009 through April 2010 are listed as "No History Reported" despite undisputed evidence of delinquencies during this period. (Def.'s Mot. for Summ. J. Ex. 11.)

18

credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested[,]" but does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default[.]" 15 U.S.C. § 1691(d)(6).

Summary judgment is appropriate because Defendant's rejection of Plaintiff's loan modification request did not constitute an adverse action under the ECOA. While the ECOA defines adverse action as including the denial of a credit modification, the same provision specifically exempts denial of a credit modification when the refusal occurs "under an existing credit arrangement where the applicant is delinquent or otherwise in default[.]" 15 U.S.C. § 1691(d)(6). "The default status of a consumer is determined at the time the creditor takes action with respect to the consumer, rather than at the time the consumer applies for credit." *Davis v. Citimortgage, Inc.*, No. 10-12136, 2011 WL 891209, at *2 (E.D. Mich. Mar. 11, 2011) (citations omitted). As in *Davis v. Citimortgage, Inc.*, which considered an identical argument made by a mortgagor under similar circumstances, Plaintiff was already delinquent on his mortgage when the HAMP modification was denied, and thus the ECOA does not apply. *Id.* at *3 (rejecting a credit applicant's argument claiming that she was current on her mortgage because she made HAMP trial program payments). The HAMP trial program did not modify Plaintiff's underlying mortgage obligations and Plaintiff was already in default on April 29, 2010, when Defendant notified Plaintiff of the modification decision. As a result, Defendant's denial did not constitute an adverse action and was not subject to the notice requirements

19

of the ECOA. 15 U.S.C. § 1691(d)(6). No disputes of material fact exist, and Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

For the reasons stated in this opinion, the Court finds that dismissal or summary judgment is appropriate as to each of Plaintiff's claims under the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, and the Equal Credit Opportunity Act.

THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Dkt. #16] is GRANTED in accordance with this opinion.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: November 7, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 7, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
 (313) 234-5137